COMMISSIONER OF CORPORATIONS AND TAXATION *vs.*
EDWARD H. FLAHERTY.

Suffolk.    May 14, 1940. — July 3, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Tax*, On income.  *Constitutional Law*, Taxation.

The income tax laid by G. L. (Ter. Ed.) c. 62, § 1, upon dividends re-
ceived by inhabitants of the Commonwealth from share accounts
in Federal savings and loan associations chartered under the home
owners' loan act of 1933 is discriminatory and invalid since similar
income received from State chartered coöperative banks is not taxed.

APPEAL from a decision by the Appellate Tax Board.

*J. B. Sullivan*, Assistant Attorney General, for the Com-
missioner of Corporations and Taxation.

*C. B. Rugg*, (*H. B. Holland* with him,) for the taxpayer.

RONAN, J.   This is an appeal by the commissioner of
corporations and taxation from a decision of the Appellate
Tax Board granting an abatement of an income tax, as-
sessed by virtue of G. L. (Ter. Ed.) c. 62, § 1, upon the divi-
dends received by the appellee in 1937 on the share accounts
owned by him in the Worcester Coöperative Federal Savings
and Loan Association (hereafter called the association), a
corporation located in Worcester in this Commonwealth and
organized and incorporated under the home owners' loan
act (48 U. S. Sts. at Large, 128, U. S. C. Title 12, § 1461,
*et seq.*).   This association resulted from the consolidation,
in 1937, of three similar associations and, later in the same
year, from the merger with the association of a coöperative
bank.   The business of the association is substantially
similar to that conducted by our State chartered coöpera-
tive banks.   Both appeal to the same type of investor and
to the same class of borrowers.   Their investments and
loans are practically identical in character.   The associa-
tion on December 31, 1937, had fourteen thousand six
hundred twenty-seven shareholders and its savings and

investment share accounts amounted to $14,518,768. The fourteen coöperative banks located in Worcester County on October 30, 1937, had twenty thousand three hundred forty-four members and a total capital of $20,700,307. The association and these various coöperative banks are in direct competition with each other.

We assume, as the Supreme Court of the United States has assumed, that Congress was empowered to create the Home Owners' Loan Corporation as provided for by the home owners' loan act. *Kay* v. *United States*, 303 U. S. 1. *Graves* v. *New York*, 306 U. S. 466. *Pittman* v. *Home Owners' Loan Corp.* 308 U. S. 21. See *First Federal Savings & Loan Association* v. *Loomis*, 97 Fed. (2d) 831, certiorari dismissed *sub nomine Martin* v. *First Federal Savings & Loan Association*, 305 U. S. 666. It was said in *Knox National Farm Loan Association* v. *Phillips*, 300 U. S. 194, 202, in sustaining the joint-stock land bank act (39 U. S. Sts. at Large, 360, U. S. C. Title 12, § 810, *et seq.*), that the Federal farm loan board, created by this act, could grant charters to associations of private persons to engage in the business of lending on farm mortgage security; that these farm loan associations were instrumentalities of the Federal government and that "building and loan associations . . . have much in common with farm loan associations incorporated by act of Congress." In view of these decisions we need not go farther and point out the similarity between the act of Congress creating farm loan associations for mortgage financing upon farms and the act of Congress establishing savings and loan associations for such financing upon urban properties or to refer to the economic situation that such agencies were created to relieve, or to suggest whether such associations might properly be considered as a part of the national credit structure devised by Congress to facilitate the administration of the fiscal affairs of the Federal government.

If the creation of such Federal instrumentalities as savings and loan associations was a valid exercise of congressional power, and if the activities of such associations are governmental functions and so entitled to whatever im-

munity would attach to these activities if they were performed by the government itself, then it was within the competency of Congress to preserve the integrity of these agencies, to protect their operations within their respective fields, and to prevent interference by the States with their lawful activities. The protective power of Congress in behalf of Federal agencies has been frequently employed in instances where the full exercise of their authorized powers was threatened by various taxing statutes of the States. *Smith* v. *Kansas City Title & Trust Co.* 255 U. S. 180, 208, 209. *Federal Land Bank of New Orleans* v. *Crosland,* 261 U. S. 374. *Trotter* v. *Tennessee,* 290 U. S. 354, 356. *Lawrence* v. *Shaw,* 300 U. S. 245, 249. Congress has from the inception of the present system of national banks, Act of June 3, 1864, 13 U. S. Sts. at Large, 99, 100–106, U. S. C. Title 12, § 1, Rev. Sts. § 5219, U. S. C. Title 12, § 548, expressly provided that the property and the shares of such institutions shall not be taxed in any manner different from or to an extent greater than that expressly designated. *Mercantile Bank* v. *New York,* 121 U. S. 138. *First National Bank of Guthrie Center* v. *Anderson,* 269 U. S. 341. *Schuylkill Trust Co.* v. *Pennsylvania,* 296 U. S. 113. *Tradesmens National Bank of Oklahoma City* v. *Oklahoma Tax Commission,* 309 U. S. 560.

The act in reference to savings and loan associations provides, U. S. C. Title 12, § 1464 (h), that "no State, Territorial, county, municipal, or local taxing authority shall impose any tax on such associations or their franchise, capital, reserves, surplus, loans, or income greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions." The tax now assailed does not offend this provision because it was not assessed upon the association or its property. It was laid upon the income of an individual. The incidence of the tax was the receipt of income by him. *Helvering* v. *Therrell,* 303 U. S. 218. *Graves* v. *New York,* 306 U. S. 466. The question is not the right of the Commonwealth to tax the association. The act last cited does not reach the question now in issue as it neither sanctions

nor inhibits State taxation of income from the shares in this association. A tax upon the association is different from a tax upon its customers, depositors and shareholders. *Clement National Bank* v. *Vermont,* 231 U. S. 120. *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103, 111. *Colorado National Bank of Denver* v. *Bedford,* 310 U. S. 41.

The appellant contends that the income received from shares in these associations is not protected by any act of Congress from the imposition of a State tax, and that immunity from such taxation on the ground that the association is an instrumentality of the Federal government is no longer tenable. The performance by the Federal government of the functions delegated to it cannot be prevented or impaired by the exercise by the State of taxing power reserved to it. That principle, we think, has always been observed, although the boundaries of immunity enjoyed by one against the other have been restricted by a series of recent decisions of the Supreme Court of the United States. It is now settled that the immunity of a governmental or State agency from taxation does not accrue to a taxpayer who has received income from such an agency. *James* v. *Dravo Contracting Co.* 302 U. S. 134. *Silas Mason Co.* v. *Tax Commission of Washington,* 302 U. S. 186. *Helvering* v. *Therrell,* 303 U. S. 218. *Helvering* v. *Mountain Producers Corp.* 303 U. S. 376. *Helvering* v. *Gerhardt,* 304 U. S. 405. *Graves* v. *New York,* 306 U. S. 466. *State Tax Commission* v. *Van Cott,* 306 U. S. 511.

The appellee does not challenge the authority of the Commonwealth to lay a tax on income received by shareholders in a Federal savings and loan association, but contends that the receipt of such income cannot be taxed if no tax is laid upon the receipt of similar income by the shareholders of a coöperative bank. Our inquiry is whether the instant tax is discriminatory against the shareholders in these associations and therefore void.

Taxes assessed upon income derived from private and governmental sources alike have been sustained provided they do not substantially interfere with the performance of governmental functions. *Metcalf & Eddy* v. *Mitchell,*

269 U. S. 514. *Willcuts* v. *Bunn*, 282 U. S. 216. *Educational Films Corp. of America* v. *Ward*, 282 U. S. 379. *Group No. 1 Oil Corp.* v. *Bass*, 283 U. S. 279. *Burnet* v. *A. T. Jergins Trust*, 288 U. S. 508. *Helvering* v. *Bankline Oil Co.* 303 U. S. 362. But that the tax must not discriminate against income received from the government seems clear from the reasoning in the decisions upholding a tax upon such income, in which the court point out that the tax is nondiscriminatory. It was said in *Helvering* v. *Gerhardt*, 304 U. S. 405, 413, that "Such discrimination was later recognized to be in itself a sufficient ground for holding invalid any form of state taxation adversely affecting the use or enjoyment of federal instrumentalities." See *First National Bank of Hartford* v. *Hartford*, 273 U. S. 548, 560; *Panhandle Oil Co.* v. *Mississippi*, 277 U. S. 218, 223; *Pacific Co. Ltd.* v. *Johnson*, 285 U. S. 480, 493; *Helvering* v. *Mountain Producers Corp.* 303 U. S. 376, 386; *Graves* v. *New York*, 306 U. S. 466, 487.

The tax in question was assessed to the appellee under the provisions of G. L. (Ter. Ed.) c. 62, § 1. See *Brink* v. *Commissioner of Corporations & Taxation*, 299 Mass. 280, 284–285. The phraseology of this last section was broad enough to include the taxation of dividends received by the appellee; but the section expressly exempts any income received from shares of "co-operative banks, building and loan associations . . . chartered by the commonwealth." There is nothing contained in our income taxing statutes that imposes upon holders of shares in coöperative banks any taxing liability which might be considered as compensatory for this exemption. Notwithstanding the broad power inherent in a State to select and classify subjects for the imposition of a tax, *Welch* v. *Henry*, 305 U. S. 134; *Whitney* v. *Tax Commission of New York*, 309 U. S. 530, we are unable to find any rational difference, having a fair and substantial relation to the object of the taxing statute, between the income received by shareholders of such an association as that under consideration and that received by the shareholders of coöperative banks that would justify taxing the former and exempting the latter. The business conducted

by each is substantially similar; and the fact that one is chartered by and under the supervision of the Federal government while the other is incorporated by the Commonwealth and is under the supervision of the State is not such a difference as will warrant the taxing of dividends received by a shareholder in the first and not in the second. The tax discriminates against the income received from a Federal fiscal agency and in favor of income received from State coöperative banks. Such an exercise of the taxing power cannot be sustained. *Miller* v. *Milwaukee*, 272 U. S. 713. *Frost* v. *Corporation Commission of Oklahoma*, 278 U. S. 515. *Macallen Co.* v. *Massachusetts*, 279 U. S. 620. *Iowa-Des Moines National Bank* v. *Bennett*, 284 U. S. 239. Compare *Whitney* v. *Tax Commission of New York*, 309 U. S. 530; *Nashville, Chattanooga & St. Louis Railway* v. *Browning*, 309 U. S. 651.

Abatement is granted in the amount found by the board, together with interest and costs. *Commissioner of Corporations & Taxation* v. *Morgan, ante*, 305.

*So ordered.*